**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANKIE BLAIR, | ) | CASE NO. 1:23-CV-00284-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | CARMEN E. HENDERSON |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OF** |
| Defendant, | ) | **OPINION & ORDER** |

## I. Introduction

Plaintiff, Frankie Blair ("Blair" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 16). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

## II. Procedural History

On September 9, 2020, Claimant filed applications for DIB and SSI, alleging a disability onset date of August 15, 2017. (ECF No. 8, PageID #: 41). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 3, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). At the hearing, Claimant amended her alleged onset date to August 1, 2019. (*Id.*). On February 16, 2022, the ALJ issued a written

decision finding Claimant was not disabled. (*Id.*). The ALJ's decision became final on January 3, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 29).

On February 14, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11-1, 15). Claimant asserts the following assignments of error:

> (1) WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN NOT PROVIDING AN ANALYSIS OF PLAINTIFF'S PAIN SYMPTOMS AS REQUIRED BY SSR 16-3.
>
> (2) WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN NOT FINDING PLAINTIFF TO HAVE A SEVERE BOWEL IMPAIRMENT, AND IN NOT INCORPORATING RELATED LIMITATIONS INTO THE RESIDUAL FUNCTIONAL CAPACITY.

(ECF No. 11-1 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleged that she was unable to perform work due to the limiting signs and symptoms associated with her impairments. She testified that she had neuropathy in her feet and down her legs. She described speeding up and slowing down of her heart rate and noted that she had blurred vision. The claimant indicated that she could stand no more than three to five minutes, that she had to sit down to cook, and that she could lift no more than five to 10 pounds. She explained that she used a cane for the prior 18 months to walk and for balance due to falls and to take pressure off the left side. She testified that she had numbness in her fingertips that was worse on the left, noting that she dropped things and had difficulty with gripping items. Further, she explained that she had limitations with squatting, bending, reaching, sitting, kneeling, and stair climbing (B3E).

(ECF No. 8, PageID #: 51).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The claimant has a history of signs and symptoms associated with her severe

2

impairments. Results from a January 10, 2016, sleep study were consistent with moderate obstructive sleep apnea (B16F/133-136). Treatment notes from January 27, 2018, reflect that she received a diagnosis for new onset atrial fibrillation (B2F/223). On March 15, 2018, she underwent excision of a left breast skin cyst (B2F/188-196). Subsequent pathology results were consistent with invasive well-differentiated keratinizing squamous cell carcinoma arising from the skin. The margins were negative for malignancy (B2F/187). Treatment notes from April 4, 2018, indicate that she had a diagnosis for obstructive sleep apnea for which she was using continuous positive airway pressure (CPAP) prior to undergoing a gastric sleeve placement and weight loss (B2F/186). Thereafter, the claimant underwent on April 10, 2018, re-excision of close margins of the previously excised squamous cell carcinoma of the skin of the left breast (B2F/173-180). A chest x-ray from July 6, 2018, showed mild degenerative changes of the thoracic spine (B2F/153). On November 5, 2018, she reported left heel pain and ankle weakness as well as neuropathy due to her diabetes mellitus. Upon examination, she exhibited mild non-pitting edema of the feet, ankles, and legs bilaterally. Epicritic sensorium was grossly intact bilaterally. She had pain with palpation to the left sinus tarsi and left plantar medial calcaneal tuberosity, as well as a moderate decrease in height of the medial longitudinal arch during weightbearing stance bilaterally. X-trays of the left ankle/foot showed an enthesophyte to the plantar calcaneal tuberosity, but no distinct degenerative changes. She was assessed with diabetes mellitus type 2, uncontrolled, without complications, equinus deformity of the foot, plantar fasciitis, and sinus tarsitis of the left foot for which supportive footwear, custom orthotics, stretching exercises, and a night splint were recommended. A left heel injection was administered (B2F/113-115).

The signs and symptoms associated with the claimant's severe impairments continued. She presented for a dermatology evaluation on November 26, 2018, with a history of possible hidradenitis. She described symptoms that included cysts, pain, and drainage in the axillae, breasts, and groin. Clinical findings included a 0.3-centimeter cystic papule on the right upper chest as well as numerous cystic papules on the bilateral axillae with double comedones present and a few sinus tracts present. She declined examination of the groin. She was assessed with a lesion on the right upper chest for which a shave biopsy was performed. She was also assessed with hidradenitis suppurativa, Hurley stage 2 for which Hibiclens wash, doxycycline, and clindamycin were prescribed (B2F/108-111). On April 15, 2019, she reported moderate improvement in her left foot pain with use of orthotics, but noted symptoms associated with neuropathy from her diabetes mellitus and post-static dyskinesia. She exhibited mild non-pitting edema to the bilateral foot, ankle, and leg bilaterally. She had a moderate decrease in height of the medial longitudinal arch during weightbearing stance bilaterally, right greater than left pain with direct palpation to the plantar medial calcaneal tuberosity. However, her muscle strength was 5/5 bilaterally and she ambulated without an aid. She was assessed with type II diabetes mellitus with neurological manifestations, equinus deformity of the foot, and plantar fasciitis for which a right heel injection was administered, a CAM walker was dispensed, physical therapy was recommended, and continued use of

gabapentin was prescribed (B2F/85-87, B3F/22-26).

The claimant sought treatment for her severe impairments. On June 18, 2019, she presented for a vascular surgery evaluation with Eric Shang, MD with concerns for bilateral foot discoloration that started three weeks prior. She also described intermittent bilateral leg pain when walking. Upon examination, she exhibited some right foot discoloration. However, she had no extremity edema, her gait was normal, and her femoral pulses and dorsalis pedis (DP) pulse were 2+ bilaterally. Dr. Shang outlined that she exhibited "no significant arterial obstruction" during the examination, noting that her discoloration may come from a small vessel vasospastic or atherosclerotic process. However, no further intervention or testing was assessed as indicated at that time (B2F/67-70). During a dermatology follow up on August 23, 2019, she reported tender bumps on her buttock, right axilla, and breast. The treatment notes that she did not feel as though oral clindamycin or Rifampin were helping. Clinical findings included a few erythematous nodules on the chest, numerous cystic papules on the bilateral axillae with double comedones, and a few sinus tracts in the axillae. She had new erythematous nodules on the left buttock, right axilla, and right medial breast, as well as tender erythematous plaque on the left elbow. She was assessed with hidradenitis suppurativa for which her treatment regimen was changed to include Doxycycline. Additionally, intralesional injection were administered (B2F/53-57).

Treatment for the claimant's severe impairments continued. During an August 30, 2019 evaluation, her blood pressure was 136/80 and her heart was in normal sinus rhythm with no murmur or gallop. She had no vertebral tenderness or extremity edema, and her wrists, shoulders, knees, and ankles had no deformity, synovitis, or effusion. She was assessed with secondary hypertension for which amlodipine and triamterene were prescribed as well as atrial fibrillation, unspecified type for which metoprolol was prescribed (B2F/51-53). She presented for a diabetic foot examination on September 19, 2019, and reported that her glucose level that day was 90. Upon examination, her bilateral posterior tibial (PT) pulses were faint, and she had mild non-pitting edema to her bilateral lower extremities. She had mild valgus deformity bilaterally and she had a moderate decrease in height of the medial longitudinal arch during weightbearing stance bilaterally. However, she had 5/5 strength bilaterally and ambulated without an aid bilaterally. She was assessed with type II diabetes mellitus with peripheral circulatory disorder and peripheral artery disease (B2F/47-48, B3F/41-44). Testing from September 26, 2020 showed that her A1C level was within normal range at 5.7 (B2F/25). The claimant presented for an evaluation with Anthony Rizzo, MD on October 13, 2019. She reported a "weak pulse" in her left foot and concern from her podiatrist about her blood flow. She described leg pain and upper thigh pain with prolonged sitting, walking, and standing, and noted she suffered from generalized arthritis. Upon examination, she had no extremity edema or ulcerations. Her gait was normal, and her sensation was grossly intact. Her bilateral femoral, DP, and PT pulses were normal. Dr. Rizzo indicated that she had no peripheral artery disease with a normal ankle-brachial index (B2F/41-44).

The evidence supports no sustained worsening in the signs and symptoms associated with these severe impairments. Treatment notes from November 8, 2019, reflect that her blood pressure was 129/80 and she had a regular heart rate and rhythm. She was assessed to have good control of her essential hypertension and her rate was assessed as controlled as it relates to paroxysmal atrial fibrillation (B2F/34-36). On January 9, 2020, her pedal and PT pulses were +1/4 bilaterally and she had mild non-pitting edema to her bilateral lower extremities. She had a moderate decrease in height of the medial longitudinal arch during weightbearing stance bilaterally and she had a mild valgus deformity bilaterally. However, she had 5/5 muscle strength bilaterally and she ambulated without an aid in diabetes mellitus shoes (B2F/25-27). As of February 21, 2020, her hidradenitis suppurativa was assessed as stable (B2F/19-21). The claimant presented for a telehealth evaluation on August 12, 2020, with complaints of intermittent episodes of palpitations that occurred mostly at night lasting between three and 40 minutes. She was assessed with palpitation and paroxysmal atrial fibrillation for which a 48-hour Holter monitor was recommended (B2F/11-13). Laboratory testing from August 24, 2020, was 5.9 (B7F/41). In her October 7, 2020 cardiology follow up, it was noted that a recent cardiac echocardiogram showed sinus tachycardia I. The Holter monitor showed sinus rhythm with periods of sinus tachycardia and periods of nocturnal sinus bradycardia. Upon examination, her blood pressure was 139/89 and she had a regular heart rate and rhythm without murmur, gallop, or rubs. Her dosage of metoprolol was increased (B2F/6-8).

The claimant continued treating for her severe impairments. On November 2, 2020, she presented for a diabetic foot examination. Her DP and PT pulses were +1/4 bilaterally and she had mild non-pitting edema to her bilateral lower extremities. She had moderate decreased in height of the medial longitudinal arch during weightbearing stance bilaterally and a mild valgus deformity bilaterally. However, she had 5/5 strength bilaterally and she ambulated without an aid (B7F/40-43). During a November 17, 2020, dermatology evaluation with Melissa Anne Vance, MSN, FNP-BC, no reports or concerns with her hidradenitis suppurativa were raised or observed (B4F/20-21). In a medical statement dated November 19, 2020, Ms. Vance indicated that the claimant started treating with her practice in September 2020 for multiple diagnoses. However, no diagnoses would limit her ability to work at that time (B5F/2). The claimant presented for a podiatry evaluation on January 7, 2021. Clinical findings included DP pulses that were +1/4 on the right and +2/4 on the left as well as +1/4 PT pulses bilaterally. She had mild non-pitting edema in her bilateral lower extremities, a round soft tissue mass within the central band of the plantar fascia, decreased bilateral ankle range of motion, mild valgus deformities bilaterally, and moderate decrease in height of the medial longitudinal arch during weightbearing stance bilaterally. However, she had 5/5 strength bilaterally, intact epicritic sensation, and she ambulated without an aid. Additionally, left foot x-rays showed no acute osseous abnormalities or distinct degenerative changes. She was assessed with plantar fascial fibromatosis and soft tissue mass (B7F/30-33, B13F/12-15).

Treatment for the claimant's severe impairments remained conservative. During a podiatry follow up on January 28, 2021, she exhibited DP pulses that were +2/4 bilaterally and PT pulses that were +1/4 bilaterally. Findings were otherwise generally unchanged, to include intact sensation and ambulation without use of an aid. Additionally, it was noted that a recent MRI showed no clear soft tissue mass, and her plantar fascia was normal in size (B7F/23-26). She presented for an evaluation on March 4, 2021, with reports of burning in her feet secondary her diabetes. She explained she had stopped treating with gabapentin until recently restarting it. She also described low back pain that radiated down into her buttocks that worsened with standing. Upon examination, her blood pressure was 130/89. She had a slight decrease in lumbar flexion but had no pain to palpation to her back and straight leg raises were negative. She had 5/5 motor strength. She was assessed to have good control of her diabetes and hypertension. Additionally, conservative treatment with warm, moist heat, back exercises, and acetaminophen was recommended for her assessed chronic bilateral low back pain with bilateral sciatica (B7F/17-19). Findings from an ophthalmology evaluation on March 10, 2021, were consistent with mild non-proliferative diabetic retinopathy bilaterally without macular edema and nuclear senior cataract bilaterally. However, her vision with best correction was 20/20 on the right and 20/20-2 on the left. Fluress, Alcaine, and Mydriacyl were prescribed (B7F/17, B12F/97-110). March 15, 2021, lumbar x-rays showed degenerative changes (B7F/56-59). Treatment notes from a telehealth evaluation on April 12, 2021, reflect reports of low back pain for which physical therapy was recommended. Additionally, discussion of adjusting her hypertension treatment regimen was discussed. However, it was noted that her diabetes remained controlled with diet (B7F/11-12).

The signs and symptoms associated with the claimant's severe impairments continued. Testing from March 15, 2019, showed that the claimant's A1C level was unchanged at 5.9 (B7F/7). During an April 19, 2021 podiatry evaluation, she reported improvement in her pain with use of Advil, custom orthotics, stretching, and use of a night splint. She exhibited a +2/4 DP pulse on the right and +1/4 on the right as well as +1/4 PT pulses bilaterally. She had mild bilateral nonpitting edema in her lower extremities, a resolving soft tissue left plantar mass, mild bilateral valgus deformities, decrease ankle range of motion, and mild pain with palpation of the sinus tarsi. However, her epicritic sensation was intact, her strength was 5/5 bilaterally, and she ambulated without use of an aid (B7F/7-10, B13F/42-48). On April 21, 2021, she presented for a physical therapy evaluation with concerns for severe back pain that radiated into her legs. Assessment findings included decreased bilateral ankle, hip, and knee strength and decreased lumbar range of motion (B14F/1-3). Treatment notes from May 5, 2021, reflect that she walked with a cane (B9F/6). As of her May 24, 2021 physical therapy session, she was assessed to show improving overall mobility and strength. She reported continued pain issues and lack of spine mobility, but it was noted that she had less pain and better tolerance for daily function (B14F/22-23). During a June 23, 2021, counseling session, the claimant again walked with a cane (B6F/12).

6

The claimant required ongoing treatment for her severe impairments. On July 11, 2021, she presented for an evaluation with Yael Mauer, MD with complaints of burning/tingling in her bilateral feet from her toes to her mid shins and hands. She explained that the pain in her feet was daily and worsening, and that the pain in her hands was occasional and mild. She was assessed with osteoarthritis of the spine without radiculopathy, neuropathy, essential hypertension, and diabetes mellitus type 2 with diabetic peripheral neuropathy (10F/24-40). Findings from ophthalmology evaluation on August 2, 2021, remained consistent with nonproliferative diabetic retinopathy bilaterally and mild cataract bilaterally. Her visual acuity with best correction was 20/30 slow-1 on the right and 20/25 slow+ on the left (B12F/76-86). She presented for an evaluation of her bilateral lower back pain with bilateral lower extremity symptoms with Moayed Alabdulkarim, MD. She reported that the pain was burning and worsening. She appeared in no acute distress upon examination. She had diffuse tenderness to palpation over the paraspinal muscles, sacroiliac joints, gluteal musculature, greater trochanter, anterior thigh, and lateral elbow bilaterally. She had mildly limited range of motion on flexion, extension, side-bending, and rotation bilaterally due to pain. His hip range of motion was significantly limited without myofascial pain with internal and external rotation. However, he had 5/5 strength in her hips, knees, and ankles bilaterally and his sensation was intact to light touch throughout the lower limbs bilaterally. Straight leg raises were negatively normally, and she was able to walk without difficulty. Imaging and physical therapy were recommended and Flexeril was prescribed (B12F/35-42). On August 18, 2021, she underwent a virtual neurology evaluation with Zarmeneh Aly, MD due to burning in her feet, occasional right-hand pain with swelling, and neck pain. She reported a history of a diagnosis for possible right carpal tunnel syndrome. During the virtual examination, she appeared in no distress. She reported a mildly antalgic gait, but she exhibited normal rapid alternating movements. Her dosage of gabapentin was increased (B12F/13-19).

Treatment for the claimant's severe impairments remained ongoing. During her August 18, 2021 ophthalmology evaluation, her visual acuity with best correction was 20/30-1+2 on the right and 20/20 on the left. The findings were consistent with nuclear senile cataract of both eyes, however, there was no evidence of diabetic retinopathy (B11F/10-33). On September 1, 2021, she reported burning and tingling in the bilateral feet from her toes to mid hands as well as in her hands. She also reported pain associated with her spinal osteoarthritis for which she felt physical therapy was unhelpful. Carvedilol, hydrochlorothiazide, and lisinopril were prescribed for her hypertension (B15F/73-77). Electrodiagnostic testing from September 20, 2021, revealed findings consistent with bilateral median neuropathies at or distal to the wrists consistent with a clinical diagnosis of left greater than right carpal tunnel syndrome, mild. It showed an absent left tibial motor response, chronic neurogenic motor until potential changes limited to intrinsic foot muscles with active motor axon loss only seen in the abductor hallucis muscle of unclear clinical significance. However, there was no significant evidence of large

7

fiber sensorimotor polyneuropathy affecting the upper or lower extremity and no significant evidence of left lumbosacral motor radiculopathy (B15F/64-69). Treatment notes from September 23, 2021, reflect that the claimant used a cane for ambulation (B15F/48).

The signs and symptoms associated with the claimant's impairments continued. Treatment notes from September 23, 2021, from a follow up with Dr. Aly reflect that wrist splints were recommended for mild bilateral carpal tunnel syndrome (B15F/48-55). During her September 23, 2021, follow up with Dr. Mauer reflect that a lumbar MRI from earlier that month showed lumbar spondylosis with moderate to severe canal stenosis at L3-4 and L4-5 that impinged on the traversing left L5 nerve roots. Trileptal was prescribed to be increased as tolerated (B16F/12-15, B16F/181-185). Testing from January 14, 2022, reflect that her A1C level was 5.8 (B16F/9). On January 17, 2022, she underwent bilateral lumbar transforaminal epidural steroid injections at L5-S1 (B16F/153-157).

Additionally, the record reflects that the claimant's weight has been at obese levels since the alleged onset date. Specifically, treatment records indicate that the claimant is five feet and six inches tall, that her weight was as high as 260 pounds, and that her body mass index reading was as high as 43.27 kg/m2 (B2F/50, B7F/18, B12F/52). As outlined previously, obesity is a medically determinable impairment that commonly leads to, and often complicates, chronic diseases. Therefore, it is reasonable to assume that the claimant's weight contributed to the limitations related to her previously discussed severe impairments.

(ECF No. 8, PageID #: 51-56).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: diabetes with non-proliferative diabetic retinopathy and neurological complications/neuropathy; bilateral nuclear senile cataracts; atrial fibrillation; peripheral circulation disorder/peripheral vascular disease; arthritis; equinus deformity of the foot; plantar fascial fibromatosis/plantar fasciitis; sinus tarsitis (left); hidradenitis suppurativa; squamous cell carcinoma of the left breast status post excision without metastasis; degenerative disc disease (lumbar and thoracic); carpal tunnel syndrome; hypertension; obstructive sleep apnea; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that as of August 1, 2019, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except could frequently use bilateral foot controls. The claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant could never climb ladders, ropes, or scaffolds. The claimant needed to avoid concentrated exposure to extreme cold, extreme heat, humidity, and wetness as well as dust, odors, fumes, and pulmonary irritants. The claimant should have had no exposure to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle.

As of July 11, 2021, the undersigned finds that the claimant has the residual functional capacity to sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except can frequently use bilateral foot controls. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, and wetness as well as dust, odors, fumes, and pulmonary irritants. The claimant should never be exposed to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle. The claimant can frequently handle, finger, and feel bilaterally.

6. The claimant is capable of performing past relevant work as a Medical Coder. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(ECF No. 8, PageID #: 44, 47, 50-51, 59-60)

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

10

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises two issues on appeal, arguing that (1) the ALJ erred in not providing an analysis of her pain symptoms as required by SSR 16-3p; and (2) the ALJ erred in not finding that she had a severe bowel impairment and not incorporating related limitations in the RFC. (ECF No. 11-1 at 1).

**1. The ALJ properly applied SSR 16-3 in considering Claimant's symptoms.**

Claimant first argues that the ALJ erred in not providing an analysis of her pain symptoms as required by SSR 16-3p. (ECF No. 11-1 at 17). Claimant asserts that the ALJ made a "boilerplate recitation" that her statements were not entirely consistent with the evidence in the record and provided a "lengthy recitation of the medical evidence, but never analyze[d] whether that evidence supports the chronic pain that Plaintiff said was causing her disability, as required by the Regulation." (*Id.* at 19).

The Commissioner responds that the ALJ "properly assessed Plaintiff's subjective complaints" and "applied several of the pertinent factors." (ECF No. 15 at 7). The Commissioner argues that the ALJ "thoroughly assessed the objective medical evidence, which was entirely proper." (*Id.* (citing *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023)). The Commissioner asserts that the ALJ also "discussed multiple aspects of treatment Plaintiff received, including the generally conservative nature of the treatment (e.g., physical therapy, exercise, medication management, heat) and suggestions of improvement with treatment"

11

and argues these were "appropriate factors for the ALJ to consider when assessing Plaintiff's complaints." (*Id.* at 8). Thus, Commissioner takes the position that "[s]ubstantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints." (*Id.* at 9).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess

12

how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant is correct that the ALJ made a "boilerplate recitation" that Claimant's allegations concerning her symptoms were not consistent with the record, but the Court does not agree that the ALJ failed to analyze the evidence. In setting forth the medical evidence, the ALJ observed that "[t]reatment for the claimant's severe impairments remained conservative," including "warm, moist heat, back exercises, and acetaminophen," as well as physical therapy. (ECF No. 8 at PageID #: 54). The ALJ noted that Claimant was observed ambulating without an aid and "reported improvement in her pain with use of Advil, custom orthotics, stretching, and use of a night splint." (*Id.* at PageID #:54-55; *see id.* at PageID #: 1018, 1030, 1036, 1419). After summarizing the medical evidence, the ALJ specifically explained his conclusion that Claimant's symptom testimony was not supported:

> However, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether supported by the objective findings. The evidence reflects that the claimant did not use her CPAP after she underwent a gastric sleeve placement and weight loss prior to the alleged onset date (B2F/186). Pathology results associated with her keratinizing squamous cell carcinoma showed no signs of metastasis (B2F/187). Clinical findings reflect evidence of intact epicritic sensation in her bilateral feet, 5/5 strength in her bilateral lower extremities, negative straight leg raises, normal rapid alternating movements, no significant arterial obstruction, and a normal ankle-brachial index (B2F/25-27, B2F/41-44, B2F/47-48, B2F/67-70,

> B2F/85-87, B2F/113-115, B3F/22-26, B3F/41-44, B7F/7-10, B7F/23-26, B7F/30-33, B7F/40-43, B12F/35-42, B13F/12-15, B13F/42- 48). The evidence contains evidence of reports of an antalgic gait as well as that she used a cane, but clinical findings included a normal gait and ambulation without use of an aid and there is no evidence that an assistive device was prescribed by a treating provider for use for either brief or prolonged ambulation, to maintain balance, or for walking on a particular terrain (see SSR 96-9p; see also B2F/47-48, B2F/85-87, B3F/22-26, B3F/41-44, B7F/7-10, B7F/23-26, B7F/30-33, B7F/40-43, B9F/6, B9F/12, B13F/12-15, B13F/42-48, B15F/48). Electrodiagnostic evidence no significant evidence of large fiber sensorimotor polyneuropathy affecting the upper or lower extremity and no significant evidence of left lumbosacral motor radiculopathy (B15F/64-69). Further, the record supports that her diabetes was managed conservatively with diet with A1C findings consistently below 6.0 (B2F/25, B7F/7, B7F/11-12, B16F/9).
>
> Nonetheless, functional limitations are warranted. Due to her neuropathic changes secondary to her diabetes and bilateral foot impairments, she should stand/walk no more than six hours in an eight-hour workday, lift/carry no more than 20 pounds occasionally and 10 pounds frequently, only frequently use bilateral foot controls, and only occasionally climb ramps and stairs. To account for degeneration in her lumbar and thoracic spine with pain that radiated into her lower extremities, as well as the effects of her obese body habitus on her maneuverability, she should never climb ladders, ropes, or scaffolds, and only occasionally balance, stoop, kneel, crouch, and crawl. To avoid exacerbating her cardiovascular and dermatological conditions, she should avoid concentrated exposure to extreme cold, extreme heat, humidity, and wetness as well as dust, odors, fumes, and pulmonary irritants. To account for the potential for fatigue associated with her obstructive sleep apnea as well as the potential for blurred vision associated with her mild non-proliferative diabetic retinopathy bilaterally without macular edema and nuclear senior cataract bilaterally, she should have no exposure to unprotected heights, dangerous moving mechanical parts, or operate a motor vehicle.
>
> As of July 11, 2021, the evidence supports a decrease in the claimant's functional abilities. Notably, due to her complaints of increased burning and numbness in her feet and imaging findings of increased degeneration in her lumbar spine with associated stenosis, she should stand/walk no more than two hours in an eight-hour workday and lift/carry no more than 10 pounds occasionally and five pounds frequently. Further, in addition to the nonexertional limitations described above, due to electrodiagnostic evidence consistent with bilateral carpal tunnel syndrome, she should only frequently handle, finger, and feel bilaterally.

(ECF No. 8 at PageID #: 57-58).

Based on this discussion, the Court concludes the ALJ complied with SSR 16-3p. The ALJ considered Claimant's statements and credited them to the extent she found them consistent with

14

the medical records. The ALJ also considered Claimant's medications and treatment other than medications, factors contemplated by SSR 16-3p. *See* 2017 WL 5180304 at *7-8. Thus, substantial evidence supports the ALJ's determination and the Court must defer to that determination, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 2. The ALJ did not err in considering Claimant's chronic diarrhea.

Claimant argues that the ALJ erred in not finding that she had a severe bowel impairment and in not incorporating limitations due to that condition into the RFC. (ECF No. 11-1 at 21). Claimant asserts that after listing over 25 diagnoses she found to be non-severe, including diarrhea, the ALJ "simply notes that none of these listed conditions would affect Plaintiff's ability to work and/or would not last the requisite 12-month period, without further analysis." (*Id.*). Claimant argues this is insufficient because "the record supports that [her chronic diarrhea] is indeed a severe impairment, and one that is medically determinable, based upon the testing done." (*Id.* at 21-22). Claimant argues this is reversable error because the ALJ failed to include any limitations into the RFC or the hypothetical questions to the vocational expert and "had appropriate limitations been included . . . the result would likely have been different." (*Id.* at 23).

The Commissioner responds that substantial evidence supports the ALJ's decision concerning Claimant's chronic diarrhea. (ECF No. 15 at 12). The Commissioner asserts that "the record does not establish that this impairment met the [12 month] durational requirement" and "the record reflects that Plaintiff denied bowel issues at examinations even subsequent to July 2021." (*Id.*). Thus, the Commissioner argues that "it cannot be said that no reasonable person could have found as the ALJ did: that Plaintiff did not have a severe bowel impairment" such that the ALJ's

15

finding should not be disturbed. (*Id.*). The Commissioner further argues that because the ALJ specifically stated that she "considered all of the claimant's medically determinable impairments, *including those that are not severe*, when assessing the claimant's residual functional capacity," nothing more is required. (*Id.* at 13 (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020)).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.3d 85, 89 (6th Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments. (ECF No. 8, PageID #: 44). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

However, "[w]hen formulating an RFC, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

The ALJ concluded that Claimant's diarrhea, as well as several other non-severe impairments, "failed to meet the durational requirement of a severe impairment and/or caused only a slight abnormality having such minimal effect that they would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (ECF No. 8, PageID #: 45). This statement makes clear that the ALJ considered Claimant's diarrhea but found that additional limitations were not warranted. Substantial evidence supports this conclusion. Claimant first complained of diarrhea for the previous two months in July 2021, only seven months before the hearing. (ECF No. 8 at PageID #: 1169). Claimant testified that she started a new treatment for her diarrhea the day of the hearing and there is nothing in the record to suggest that the problem was expected to last after that treatment such that it would satisfy the durational requirement. (*Id.* at PageID #: 82).

There is also no reason to believe that the ALJ did not consider the combination of all Claimant's impairments. In summarizing the applicable law, the ALJ cited the requirement that she "consider all of the claimant's impairments, including impairments that are not severe." (*Id.* at PageID # 43). The ALJ indicated she had "considered all symptoms" in formulating the RFC. (*Id.*

17

at PageID #: 51). The Sixth Circuit has found that such statements, combined with a discussion of the nonsevere impairments at Step Two, are sufficient to show that the ALJ complied with the regulations. *Emard*, 953 F.3d at 851-52.

Thus, the Court concludes that substantial evidence supports the ALJ's conclusion that Claimant's chronic diarrhea did not warrant additional limitations and the ALJ considered the combination of all Claimant's impairments in crafting the RFC. Accordingly, the Court will defer to the ALJ's decision.

## VI. Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff's benefits. Plaintiff's Complaint is DISMISSED.

Dated: January 18, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE